BLANK ROME LLP
Ana Tagvoryan (SBN 246536)
ana.tagvoryan@blankrome.com
Harrison Brown (SBN 291503)
harrison.brown@blankrome.com
Nicole N. Wentworth (SBN 334007)
nicole.wentworth@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:   424.239.3400
Facsimile:   424.239.3434

Attorneys for Defendant
TARGET CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| LAURA MAYBAUM, on behalf of herself and all others similarly situated,<br><br>                        Plaintiff,<br><br>        vs.<br><br>TARGET CORPORATION; and DOES 1 through 10, inclusive,<br><br>                        Defendants. | Case No. 2:22-cv-00687-MCS-JEM<br><br>*Assigned to the Hon. Mark C. Scarsi and the Hon. John E. McDermott*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Hearing:<br>Date:        April 4, 2022<br>Time:       9:00 A.M.<br>Place:      First Street Courthouse<br>               350 W. 1st Street<br>               Courtroom 7C, 7th Floor<br>               Los Angeles, CA 90012<br>Judge:     Hon. Mark C. Scarsi<br><br>Compl. Filed:        December 20, 2021<br>Trial Date:            Not set |

128345866

# TABLE OF CONTENTS

**Page**

I.      Introduction ...................................................................................... 7

II.     Relevant Background ......................................................................... 7

    A.    Plaintiff's Complaint ................................................................ 7

    B.    Plaintiff's Dealings with Target .............................................. 9

    C.    The Target Terms & Conditions ............................................ 11

III.    Legal Standard ................................................................................ 14

IV.     Argument ........................................................................................ 16

    A.    The Parties Formed an Agreement, Which Includes an Arbitration Provision, When Plaintiff Created Her Online Account .......................... 16

    B.    The Parties Delegated Arbitrability to the Arbitrator ............. 18

    C.    Arbitration Should Proceed on an Individual Basis ................ 20

    D.    All Other Issues Are Reserved for the Arbitrator .................. 22

    E.    The Court Should Dismiss or Stay the Instant Litigation in Favor of Arbitration ........................................................................ 30

V.      Conclusion ...................................................................................... 31

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Amirani v. Arthur J. Gallagher Serv. Co., LLC*,
  No. 20-01526, 2020 WL 8484876 (C.D. Cal. Dec. 28, 2020) .........................29, 30

6

7

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) ........................................14

8

9

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) .........................................15

10

11

*Baltazar v. Forever 21, Inc.*,
  367 P.3d 6 (Cal. 2016)..........................................................................................29

12

*Blair v. Rent-A-Ctr., Inc.*,
  928 F.3d 819 (9th Cir. 2019) .............................................................................24, 26

13

14

*Bolanos v. Khalatian*,
  231 Cal. App. 3d 1586 (Cal. Ct. App. 1991)...........................................................17

15

16

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ...........................................................15, 18, 19, 30

17

18

*Califano v. Yamasaki*,
  442 U.S. 682 (1979)..............................................................................................20

19

20

*Circuit City Stores, Inc. v. Ahmed*,
  283 F.3d 1198 (9th Cir. 2002) ................................................................................29

21

22

*Clark v. Beauty Sys. Grp., LLC*,
  No. 19-258, 2019 WL 4148180 (C.D. Cal. Apr. 25, 2019)......................................29

23

*Clifford v. Quest Software Inc.*,
  38 Cal. App. 5th 745, 753 (Cal. Ct. App. 2019).....................................................28

24

25

*Dean Witter Reynolds Inc. v. Byrd*,
  470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) .........................................14

26

27

*DiCarlo v. MoneyLion, Inc.*,
  988 F.3d 1148 (9th Cir. 2021) ................................................................................26

28

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

*Entravision Commc'ns Corp. v. BroadView Software, Inc.*,
  No. 09-4573, 2009 WL 10675885 (C.D. Cal. Aug. 26, 2009) ...............................31

*Falls v. Soulbound Studios, LLC*,
  No. 21-00961, 2021 WL 4295137 (C.D. Cal. July 6, 2021) ...........................22

*Ferguson v. Corinthian Colls., Inc.*,
  733 F.3d 928 (9th Cir. 2013) ...................................................................15

*Gartner v. Eikill*,
  319 N.W.2d 397 (Minn. 1982) .................................................................17

*Harmon v. RDO Equip. Co.*,
  No. 18-02602, 2019 WL 4238877 (C.D. Cal. July 3, 2019) ...........................20

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  —— U.S. ——, 139 S. Ct. 524, 202 L.Ed.2d 480 (2019) ...................... 15, 23

*Hill v. BBVA USA*,
  No. 20-1016, 2021 WL 2206477 (S.D. Cal. June 1, 2021) ............................27

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ..................................15

*Hydranautics v. FilmTec Corp.*,
  306 F. Supp. 2d 958 (S.D. Cal. 2003) .......................................................17

*Ingalls v. Spotify USA, Inc.*,
  No. 16- 03533, 2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) ............................19

*Johnson v. JP Morgan Chase Bank, N.A.*,
  No. 17-2477, 2018 WL 4726042 (C.D. Cal. Sept. 18, 2018).........................28, 29

*In re Juul Labs, Inc., Antitrust Litig.*,
  No. 20-02345, 2021 WL 3675208 (N.D. Cal. Aug. 19, 2021)...............................26

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019)..........................................................................21

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)..............................................................................31

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) ................................................................31

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

*Magana v. DoorDash, Inc.*,
  343 F. Supp. 3d 891 (N.D. Cal. 2018) .................................................. 27

*McArdle v. AT&T Mobility LLC*,
  772 Fed. Appx. 575 (9th Cir. 2019) ..................................................... 23

*McGill v. Citibank, N.A.*,
  2 Cal. 5th 945 (2017) ................................................................. *passim*

*McGovern v. U.S. Bank N.A.*,
  362 F. Supp. 3d 850 (S.D. Cal. 2019) .............................................. 28, 29

*Medtronic, Inc. v. Advanced Bionics Corp.*,
  630 N.W.2d 438 (Minn. Ct. App. 2001) ............................................... 25

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ............................... 15

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ............................................................ 16

*O'Connor v. Warner Bros. Animation Inc.*,
  No. 20-09291, 2021 WL 3598581 (C.D. Cal. Jan. 21, 2021) .............. 15, 18, 19, 20

*Oberstein v. Live Nation Ent., Inc.*,
  No. 20-3888, 2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) .................. 16

*Pokorny v. Quixtar, Inc.*,
  601 F.3d 987 (9th Cir. 2010) .............................................................. 30

*Robinson v. J & K Admin. Mgmt. Servs., Inc.*,
  817 F.3d 193 (5th Cir. 2016) .............................................................. 20

*Roman v. Superior Ct.*,
  92 Cal. Rptr. 3d 153 (Cal. Ct. App. 2009) ........................................... 29

*Saheli v. White Mem'l Med. Ctr.*,
  21 Cal. App. 5th 308, 332 (Cal. Ct. App. 2018) .................................... 27

*Salberg v. Massage Green Int'l Franchise Corp.*,
  No. 15-02805, 2016 WL 3667154 (S.D. Cal. July 11, 2016) ................... 22

*Shivkov v. Artex Risk Sols., Inc.*,
  974 F.3d 1051 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2856 (2021) .............. 15, 20

128345866

5

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

*Stolt- Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)..................................................................................21

*Thinknet Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
    368 F.3d 1053 (9th Cir. 2004) ...............................................................30

*Tillage v. Comcast Corp.*,
    772 Fed. Appx. 569 (9th Cir. 2019) .......................................................24

*Torres v. Secure Commc'n Sys., Inc.*,
    No. 20-00980, 2020 WL 6162156 (C.D. Cal. July 25, 2020) ................19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................................20

*Wells Fargo Advisors, LLC v. Sappington*,
    884 F.3d 392 (2d Cir. 2018) ...................................................................20

*Wright v. Sirius XM Radio Inc.*,
    No. 16-01688, 2017 WL 4676580 (C.D. Cal. June 1, 2017) ...........28, 29

**Statutes**

9 U.S.C. § 1 (Federal Arbitration Act) .................................13, 14, 21, 24, 31

9 U.S.C. § 2........................................................................................................14

9 U.S.C. § 3........................................................................................................31

Cal. Civ. Code § 1750..........................................................................................8

Cal. Bus. & Prof. Code § 17500 ..........................................................................8

Cal. Bus. & Prof. Code § 17200. .........................................................................8

**Other Authorities**

AAA Commercial Arbitration Rule 7...................................................................19

AAA Consumer Arbitration Rule 14 ...................................................................20

Restatement (Second) of Conflict of Laws § 187...............................................25

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

# I.    INTRODUCTION.

Plaintiff Laura Maybaum ("Plaintiff")—an online account holder since July 2018—shopped at one of Defendant Target Corporation's ("Target") stores and redeemed an offer with her purchase which allowed her to receive a 'FREE $10 Target GiftCard' with the purchase of $40 or more. Three days later, she used that $10 gift card on Target's website. Thereafter, Plaintiff returned the $40 in qualifying purchases, *without* also returning the gift card, and expected a full refund of her purchase price. Plaintiff then sued because Target discounted $10 for the gift card from her return, even though Plaintiff had already redeemed the gift card online and did not return the merchandise that she purchased with the gift card.

Plaintiff's customer account creation, as well as her use of the gift card on Target's website, is subject to Target's Terms & Conditions, which Plaintiff agreed to several times when transacting business with Target online. Under the parties' agreement: (1) all disputes arising from, related to, or connected in any way with use of the website are to be arbitrated; (2) all disputes related to the validity or enforceability of the arbitration provision are delegated to an arbitrator; and (3) arbitration is to proceed on an individual, non-class basis. The Court should, respectfully, compel Plaintiff to arbitrate her claims on an individual, non-class basis.

To the extent Plaintiff asserts that her claims fall outside the scope of her contract with Target, and specifically the arbitration clause, or that the Terms & Conditions are subject to generally applicable contract defenses, these arguments are reserved for the arbitrator.

# II.    RELEVANT BACKGROUND.

## A.    Plaintiff's Complaint.

Plaintiff alleges that Defendant "marketed, advertised and offered and continues to market, advertise and offer 'FREE' gift cards with purchase of products." (*See* Dkt. No. 1-3 (hereafter, "Compl."), ¶ 10.) For example, "[t]he advertisement upon which Plaintiff relied stated that a consumer could obtain a 'FREE $10 Target GiftCard' with

the purchase of toys or kids' books totaling $40 or more (excluding specifically identified toys)." (*Id.*) According to Plaintiff, however, "the gift card was not really free." (*Id.*) "Instead, Plaintiff, and all other customers (Class members), were charged $10 to obtain the purportedly 'free' $10 gift card." (*Id.*)

Specifically, Plaintiff asserts that "[i]n reliance on Target's advertisement, representations and claims that she would receive a 'free' $10 gift card after spending $40 on certain toys and/or kids' books, on or about November 14, 2020, Plaintiff purchased, among other things, a qualifying toy from Target that was marked $40.49 and received her purportedly 'free' $10 Target gift card." (*Id.*, ¶ 12.) According to Plaintiff, "[w]hen Plaintiff returned the toy on November 29, 2020, Defendant refused to refund the full advertised price of the toy or provide store credit for the full advertised price of the toy." (*Id.*, ¶ 13.) Plaintiff claims that Defendant "actually charges the consumer $10 less for the items purchased and then charges the consumer $10 for the purportedly 'free' gift card." (*Id.*, ¶ 14.) "If the consumer then returns the items purchased, the consumer receives the discounted price(s) for same, thereby placing the consumer in a worse position than prior to the transaction." (*Id.*) In Plaintiff's case, Plaintiff spent $40.49 in order to qualify for the $10 gift card but, after returning the toy [but having already used the gift card, as discussed below], Plaintiff was refunded just $30.49. (*Id.*) Plaintiff claims she was left with a $10 gift card which had no cash value and could only be used at Defendant's store. (*Id.*)

Plaintiff asserts that Defendant violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"), and that Defendant engaged in negligent misrepresentation. Plaintiff seeks to represent a class of consumers defined as follows: "All persons in California who earned a purportedly 'free' Target gift card for which they were charged money, in connection with their participation in a promotion in which the consumer purchased at least one qualifying

8

item from a Target store during the Class Period," which is four years. (*Id.*, ¶¶ 16, 20.) Plaintiff also seeks to represent a subclass of consumers defined as follows: "All persons in California who earned a purportedly 'free' Target gift card for which they were charged money, in connection with their participation in a promotion in which the consumer purchased at least one qualifying item from a Target store during the Class Period, and who received less than the full, advertised price of the qualifying item(s), when returning said items to Target." (*Id.*, ¶ 20.)

### B.    Plaintiff's Dealings with Target.

On July 17, 2018, Plaintiff created an account on Target's website. (Declaration of Deborah Stoops ("Stoops Decl."), ¶ 6.) Using this account, Plaintiff made several purchases online over the last four years. (*Id.*, ¶ 7.) Plaintiff used the gift card that she received from the in-store promotional purchase on November 14, 2020 (Compl., ¶ 12) and redeemed it on the Target website on November 17, 2020 (Stoops Decl., ¶ 8). Plaintiff returned the toy that she bought in order to qualify for the gift card promotion on November 29, 2020 (Compl., ¶ 13), but Plaintiff did not return the gift card (having already redeemed it online on November 17, 2020) or the products that she purchased online with the gift card. (Stoops Decl., ¶ 9.)

All customers, including Plaintiff, must have a Target account to transact on Target's website. (Declaration of Christopher Cook ("Cook Decl."), ¶ 4.) At all times relevant herein, in order to create an account, each user was presented with a hyperlink to, and asked to accept, the Terms & Conditions in a space directly above the button to proceed:

## Create your Target account

Email address

First name

Last name

Mobile phone number (optional)

Create password                                          show

☐ Keep me signed in
By checking this box you won't have to sign in as often on this device. For your security, we recommend only checking this box on your personal devices.

By creating an account, you are agreeing to the Target terms & conditions and Target privacy policy, including receipt of Target exclusive email offers and promotions. To manage your marketing choices please access the Choice section of the Target Privacy Policy or call Target Guest Relations.

**Create account**

Or sign in

(*Id.*, ¶ 5.) Clicking "terms & conditions" would take the user to the page containing the then-current Terms & Conditions. (*Id.*) When Plaintiff created an account on July 17, 2018, Plaintiff would have undertaken these same steps.[1] (*Id.*, ¶ 7.) In addition, at all relevant times herein, each time a user placed an order on the website, the user would again be presented with a hyperlink to, and asked to reaffirm the user's acceptance of, the Terms & Conditions:

---

[1] Plaintiff's counsel represented that "Plaintiff does not recall reviewing any terms and conditions or agreeing to any specific terms and conditions." (Declaration of Harrison Brown ("Brown Decl."), ¶ 2, Ex. 3, at Feb. 25, 2022 message at 12:01 P.M.) This fact is irrelevant. *See infra*, § IV.A.

128345866                           10



(*Id.*, ¶ 6.) Plaintiff would have been presented with and asked to accept the Terms & Conditions before making each of her many online purchases over the last four years, including the November 17, 2020 purchase in which she used the gift card at issue. (*Id.*, ¶ 7.)

    **C.    The Target Terms & Conditions.**

    At all times relevant herein, the following language has appeared at the top of the Terms & Conditions page:[2]

        PLEASE READ THE FOLLOWING CAREFULLY AS IT AFFECTS YOUR LEGAL RIGHTS. THESE TERMS & CONDITIONS CONTAIN AN AGREEMENT TO ARBITRATE THAT REQUIRES THE USE OF ARBITRATION ON AN

---

[2] The style was slightly different prior to Plaintiff's November 17, 2020 purchase. (Cook Decl., ¶ 9, Ex. 2.) At the time of Plaintiff's account sign-up, instead of appearing in all-capital letters, the language was displayed in bold. (*Id.*) In addition, the notice advised that "[t]he arbitration agreement is set forth in the 'Arbitration Agreement' section below" and included a link which, if clicked, would take Plaintiff directly to the arbitration provision. (*Id.*)

INDIVIDUAL BASIS TO RESOLVE DISPUTES RATHER
THAN JURY OR ANY OTHER COURT PROCEEDINGS, OR
CLASS ACTIONS OF ANY KIND.

(*Id.*, ¶ 8, Ex. 1.)

At all times relevant herein, the Terms & Conditions have provided that certain disputes and the enforceability of the Terms & Conditions are to be arbitrated: [3]

YOU AND TARGET AGREE THAT IN THE EVENT OF ANY
CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN
CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF,
RELATING TO, OR CONNECTED IN ANY WAY WITH THE
SITE,    OR    THE    BREACH,    ENFORCEMENT,
INTERPRETATION, OR VALIDITY OF THESE TERMS &
CONDITIONS, SUCH CLAIM, DISPUTE OR CONTROVERSY
WILL BE RESOLVED EXCLUSIVELY BY FINAL AND
BINDING ARBITRATION, EXCEPT AS OTHERWISE SET
FORTH IN THESE TERMS & CONDITIONS ARBITRATION
IS MORE INFORMAL THAN A LAWSUIT IN COURT AND
USES A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE
OR JURY. ARBITRATION IS SUBJECT TO VERY LIMITED
REVIEW BY COURTS, BUT ARBITRATORS CAN AWARD

---

[3] Prior to Nov. 17, 2020, the language contained a non-substantive difference: "You and Target agree that in the event of any claim, dispute, or controversy (whether in contract, tort, statute, or otherwise) arising out of, relating to, or connected in any way with (1) the site or (2) the breach, enforcement, interpretation, application, or validity of these Terms & Conditions, such claim, dispute or controversy will be resolved exclusively by final and binding arbitration, except as otherwise set forth in these Terms & Conditions (the 'Arbitration Agreement')." (Cook Decl., ¶ 9, Ex. 2.) In addition, the language no longer appeared in all capital letters and fell under a heading, "Agreement to Binding Arbitration." (*Id.*)

> THE SAME DAMAGES AND RELIEF THAT A COURT CAN
> AWARD.

(*Id.*, ¶ 8, Ex. 1.) At all times relevant herein, the agreement also has provided that "[t]he arbitration will be conducted under the then current rules of the AAA."[4] (*Id.*)

At all times relevant herein, the agreement also included a class waiver:[5]

> THE MAKING OF CLAIMS OR RESOLUTION OF DISPUTES
> PURSUANT TO THIS AGREEMENT SHALL BE IN YOUR
> INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR
> CLASS MEMBER IN ANY PURPORTED CLASS OR
> REPRESENTATIVE PROCEEDING. YOU AGREE THAT TO
> THE EXTENT PERMITTED BY APPLICABLE LAW: (1) ANY
> AND ALL DISPUTES, CLAIMS, AND CAUSES OF ACTION
> ARISING OUT OF OR CONNECTED WITH THE SITE
> AND/OR THESE TERMS & CONDITIONS WILL BE
> RESOLVED INDIVIDUALLY IN THE FORUM DESIGNATED
> IN THIS DISPUTES SECTION, WITHOUT RESORT TO ANY
> FORM OF CLASS ACTION….

(*Id.*, ¶ 8, Ex. 1.)

At all times relevant herein, the Terms & Conditions have been governed by the Federal Arbitration Act ("FAA") and the laws of Minnesota:[6]

---

[4] Prior to the November 17, 2020 purchase, the language was: "The arbitration will be conducted under the then current and applicable rules of the American Arbitration Association ('AAA')." (Cook Decl., ¶ 9, Ex. 2.)

[5] Prior to the November 17, 2020 purchase, the language was: "The parties further agree that any arbitration shall be conducted in their individual capacities and not as a class action or other representative action, and the parties expressly waive their right to file a class action or seek relief on a class basis." (Cook Decl., ¶ 9, Ex. 2.)

[6] Prior to the November 17, 2020 purchase, the language was: "The Arbitration Agreement evidences a transaction in interstate commerce and thus the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ('FAA'), will govern the interpretation and enforcement of this section. If the FAA is found not to apply to any issue that arises

YOU AGREE THAT ALL MATTERS RELATING TO YOUR ACCESS TO OR USE OF THE SITE AND ALL MATTERS ARISING OUT OF OR RELATED TO THESE TERMS & CONDITIONS, INCLUDING ALL DISPUTES, WILL BE GOVERNED BY THE LAWS OF THE FEDERAL ARBITRATION ACT (FAA), THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA, AND THE LAWS OF THE STATE OF MINNESOTA, WITHOUT REGARD TO MINNESOTA'S CHOICE OF LAW PRINCIPLES.

(*Id.*, ¶ 8, Ex. 1.)

## III.    LEGAL STANDARD.

This Court recently summarized the legal standard for a motion to compel arbitration as follows:

> "[T]he Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (quoting 9 U.S.C. § 2). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84

under this section or the enforcement of the Arbitration Agreement, then that issue shall be resolved under the laws of the State of Minnesota… Except as set forth in the Arbitration Agreement section above, all matters relating to your access to or use of the site and all matters arising out of or related to these Terms & Conditions, will be governed by the applicable laws of the United States of America and the laws of the State of Minnesota, without regard to Minnesota's choice of law principles." (Cook Decl., ¶ 9, Ex. 2.)

L.Ed.2d 158 (1985). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Generally, a court's role is limited to determining "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)). But even these gateway issues can be submitted to an arbitrator where there is clear and unmistakable evidence that the parties intended that result. *See id.* (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, —— U.S. ——, 139 S. Ct. 524, 528, 202 L.Ed.2d 480 (2019).

*O'Connor v. Warner Bros. Animation Inc.*, No. 20-09291, 2021 WL 3598581 (C.D. Cal. Jan. 21, 2021) (Scarsi, J.).

In the context of class actions, "the availability of class arbitration is a [third] gateway issue that a court must presumptively decide" unless the arbitration agreement clearly and unmistakably delegates that issue to the arbitrator. *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1057 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2856 (2021). If an agreement is silent on class arbitration, a court may not permit class arbitration. *Id.*

## IV.  ARGUMENT.

### A.  The Parties Formed an Agreement, Which Includes an Arbitration Provision, When Plaintiff Created Her Online Account.

The answer to first gateway question—"whether there is an agreement to arbitrate between the parties"—is 'yes.' As discussed above, in order to transact on Target's website, each user must first create an account. (Cook Decl., ¶ 4.) Each user is conspicuously presented with a hyperlink to and asked to click a button to accept the Terms & Conditions as part of the account creation process. (*Id.*, ¶ 5.) In each transaction thereafter, each user is again conspicuously presented with a hyperlink to and asked to reaffirm the user's acceptance of the Terms & Conditions by clicking a button. (*Id.*, ¶ 6.) Plaintiff went through this process when Plaintiff created an account on July 17, 2018, and again when Plaintiff redeemed the disputed gift card online on November 17, 2020. (Cook Decl., ¶ 7; Stoops Decl., ¶¶ 6, 8.)

Because the Terms & Conditions were conspicuously presented to Plaintiff and Plaintiff was asked to click a button to accept the Terms & Conditions each time she transacted online, the Terms & Conditions are akin to clickwrap. *Oberstein v. Live Nation Ent., Inc.*, No. 20-3888, 2021 WL 4772885, at *6 (C.D. Cal. Sept. 20, 2021) (enforcing agreement where "[t]he text linking to the TOU is placed conspicuously close to the buttons that the users are required to press to sign up, sign in, or complete a purchase.").[7]

Plaintiff does not dispute that she accepted the Terms & Conditions by completing the transactions with notice of their existence. Her counsel states only that

___

[7] Unlike a clickwrap agreement, which is almost always enforceable, a browsewrap agreement occurs where "a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen" such that it "does not require the user to manifest assent to the terms and conditions expressly," and instead the user "gives his assent [to the terms and conditions] simply by using the website." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (internal quotation marks and citation omitted). Browsewrap agreements are nevertheless enforceable where the user had knowledge of the agreement. *Id.* at 1176-77.

"Plaintiff does not recall reviewing any terms and conditions or agreeing to any specific terms and conditions." (Brown Decl., ¶ 2, Ex. 3, at Feb. 25, 2022 message at 12:01 P.M.)

Plaintiff's inability to recall, or even failure to read, is irrelevant. Both Minnesota and California law look to the parties' objective indications in determining whether a meeting of the minds existed rather than the parties' later-expressed, or subjective, intentions or memories. *See Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958, 970 (S.D. Cal. 2003) ("Applying either Minnesota or California law, the result is the same: Cadotte, is bound by the contract's terms regardless of his professed forgetfulness years after the fact.").

In addition, and though this is an issue reserved for the arbitrator as part of a possible unconscionability argument by Plaintiff (*see infra* § IV.D.4), Target notes that the Terms & Conditions provided sufficient notice of the arbitration provision because, among other things, the top of the Terms & Conditions notified Plaintiff that "THESE TERMS & CONDITIONS CONTAIN AN AGREEMENT TO ARBITRATE THAT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES RATHER THAN JURY OR ANY OTHER COURT PROCEEDINGS, OR CLASS ACTIONS OF ANY KIND." (Cook Decl., ¶ 8, Ex. 1.)

When a party opposing arbitration does not recall if she received a copy of the agreement containing the arbitration provision, the Court may ask whether the agreement was available to the party. If it was, and the party fails to provide affirmative evidence to the contrary, then the party is presumed to have provided his assent. *See Gartner v. Eikill*, 319 N.W.2d 397, 398 (Minn. 1982) ("[A] person who signs a contract may not avoid it on the ground that he did not read it or thought its terms to be different."); *Bolanos v. Khalatian*, 231 Cal. App. 3d 1586, 1590 (Cal. Ct. App. 1991) (holding that when a person signs an instrument, the person "may not avoid its terms on the ground he failed to read it before signing it.").

Plaintiff has not presented any evidence that she did not receive the Terms & Conditions. That Plaintiff did not save a copy of and cannot remember reviewing the Terms & Conditions, either during account creation or the transaction at issue, does not change the outcome: Plaintiff agreed to the Terms & Conditions, and the Terms & Conditions contain an agreement to arbitrate.

**B.      The Parties Delegated Arbitrability to the Arbitrator.**

The Court should compel Plaintiff to arbitrate the arbitrability of her claims against Target because the Terms & Conditions contain two separate provisions which evidence the parties' clear and unmistakable intent to delegate arbitrability.

First, the Terms & Conditions contain an express delegation provision, which states that "in the event of any claim, dispute, or controversy … arising out of, relating to, or connected in any way with … the breach, enforcement, interpretation, or validity of these Terms & Conditions, such claim, dispute or controversy will be resolved exclusively by final and binding arbitration…." (Cook Decl., ¶ 8, Ex. 1.) This Court has found similar language to constitute clear and unmistakable evidence of an agreement to arbitrate arbitrability. *See O'Connor*, 2021 WL 3598581, at *2 (compelling arbitration of arbitrability where "[t]he arbitration agreements between the parties expressly delegate decisions over 'any dispute over the enforceability or validity of this agreement to arbitrate' to the arbitrator.").

Second, the agreement incorporates the AAA rules:  "The arbitration will be conducted under the then current rules of the AAA." (Cook Decl., ¶ 8, Ex. 1.) The Ninth Circuit has held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130. This is in part because the AAA rules provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the … validity of the arbitration agreement." *Id.*

Moreover, in this Circuit, there is no requirement that "contracting parties be sophisticated … before a court may conclude that incorporation of the AAA rules"

adequately demonstrates the parties' intent to delegate. *Brennan*, 796 F.3d at 1130 (affirming dismissal of employee's wrongful termination lawsuit because of arbitration clause incorporating AAA rules); *see also O'Connor*, 2021 WL 3598581, at *2 (finding "agreements' incorporation of the JAMS arbitration rules also constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability" in a wage and hour class action, without considering the parties' relative levels of sophistication).[8]

Finally, even questions of the enforceability of the arbitration agreement are delegated to the arbitrator by incorporation of the arbitration rules. *Brennan*, 796 F.3d at 1131 (holding that a plaintiff's argument that an agreement is unconscionable, and thus unenforceable, was a question for the arbitrator to decide where the agreement incorporated the AAA rules).

Here, in addition to expressly delegating arbitrability, by incorporating the AAA rules, the parties clearly and unmistakably delegated the question of arbitrability, including such things as scope of the arbitration clause and enforceability of the agreement, to the arbitrator. *See* AAA Commercial Arbitration Rule 7(a), available at   https://www.adr.org/sites/default/files/CommercialRules_Web-Final.pdf

---

[8] Although the contract at issue in *Brennan* was an at-will employment contract between sophisticated parties, *Brennan* cautioned that its holding does not "foreclose the possibility that this rule could also apply to unsophisticated parties," observing that "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties." 796 F.3d at 1130-31. Nonetheless, the court limited its holding to the facts of the case, which involved an arbitration agreement between "sophisticated" parties. *Id.* Since then, only a minority of district courts have questioned whether *Brennan* applies when one of the parties is "unsophisticated." *See, e.g.*, *Ingalls v. Spotify USA, Inc.*, No. 16- 03533, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016). However, most have found this consideration to be irrelevant. *Torres v. Secure Commc'n Sys., Inc.*, No. 20-00980, 2020 WL 6162156, at *4 (C.D. Cal. July 25, 2020) (noting that "the majority of courts … find[ ] that although the facts in *Brennan* were limited to sophisticated parties, it applies similarly to non-sophisticated parties.").

1    (last accessed Feb. 25, 2022) ("The arbitrator shall have the power to rule on his or her

2    own jurisdiction, including any objections with respect to the existence, scope, or

3    validity of the arbitration agreement or to the arbitrability of any claim or

4    counterclaim."); AAA Consumer Arbitration Rule 14(a), available at

5    https://www.adr.org/sites/default/files/Consumer_Rules_Web_2.pdf (last accessed

6    Feb. 25, 2022) (same language). As such, the arbitrator is the only party who may

7    decide if Plaintiff's dispute against Target is arbitrable.

8          **C.    Arbitration Should Proceed on an Individual Basis.**

9          This Court has authority to adjudicate the issue of class arbitrability. Target is

10   cognizant of the fact that in *O'Connor*, this Court "adopt[ed] the Second and Fifth

11   Circuit's reasoning and '[left] to the arbitrator the decision regarding the arbitrability

12   of class claims.'" 2021 WL 3598581, at *3 (quoting *Harmon v. RDO Equip. Co.*, No.

13   18-02602, 2019 WL 4238877, at *5 (C.D. Cal. July 3, 2019), and citing *Wells Fargo

14   Advisors, LLC v. Sappington*, 884 F.3d 392, 398 (2d Cir. 2018) and *Robinson v. J & K

15   Admin. Mgmt. Servs., Inc.*, 817 F.3d 193, 197 (5th Cir. 2016)). However, after the

16   Second and Fifth Circuit cases were decided, the Ninth Circuit in 2020 agreed with

17   seven other circuit courts and "conclude[d] that class arbitration is a gateway issue for

18   a court to presumptively decide." *Shivkov*, 974 F.3d at 1068. This Court's opinion in

19   *O'Connor* did not consider the Ninth Circuit's holding in *Shivkov*.

20         In light of the fact that the Ninth Circuit has clarified that class arbitrability is

21   an issue for this Court to decide, this Court should exercise its authority and compel

22   Plaintiff to arbitrate her claims against Target on an individual basis because the

23   Terms & Conditions include a class waiver and because the Terms & Conditions do

24   not otherwise expressly provide for class arbitration.

25         As the Supreme Court has repeatedly observed, "[t]he class action is 'an

26   exception to the usual rule that litigation is conducted by and on behalf of the

27   individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348

28   (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). After all, in a

class action, "[t]he arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010) (citation omitted). Given the fundamental differences between individual arbitrations and class arbitrations, the Supreme Court recently held that "[n]either silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself," *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019), namely, "the individualized form of arbitration envisioned by the FAA," *id.* at 1416.

In this instance, the Terms & Conditions include an express class waiver, which provides:

> THE MAKING OF CLAIMS OR RESOLUTION OF DISPUTES PURSUANT TO THIS AGREEMENT SHALL BE IN YOUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. YOU AGREE THAT TO THE EXTENT PERMITTED BY APPLICABLE LAW: (1) ANY AND ALL DISPUTES, CLAIMS, AND CAUSES OF ACTION ARISING OUT OF OR CONNECTED WITH THE SITE AND/OR THESE TERMS & CONDITIONS WILL BE RESOLVED INDIVIDUALLY IN THE FORUM DESIGNATED IN THIS DISPUTES SECTION, WITHOUT RESORT TO ANY FORM OF CLASS ACTION….

(Cook Decl., ¶ 8, Ex. 1.) In addition, at the top, the Terms & Conditions advise that "THESE TERMS & CONDITIONS CONTAIN AN AGREEMENT TO ARBITRATE THAT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES RATHER THAN JURY OR ANY OTHER COURT PROCEEDINGS, OR CLASS ACTIONS OF ANY KIND." (*Id.*)

Both provisions clearly and expressly preclude class arbitration. *See Salberg v. Massage Green Int'l Franchise Corp.*, No. 15-02805, 2016 WL 3667154, at *1, *3 (S.D. Cal. July 11, 2016) (compelling arbitration on an individual basis where agreement provided, "By signing this agreement, I am agreeing to waive any substantive or procedural rights that I may have to bring an action on a class or collective basis.").

Even without this express language, arbitration would still be required to take place on an individual basis because Plaintiff and Target did not contractually agree to class arbitration. *See, e.g., Falls v. Soulbound Studios, LLC*, No. 21-00961, 2021 WL 4295137, at *4 (C.D. Cal. July 6, 2021) ("[B]ecause the arbitration provision does not expressly provide for class arbitration, the Court compels individual arbitration.") (internal citation omitted). Thus, the Court should compel individual arbitration pursuant to the Terms & Conditions.

### D.    All Other Issues Are Reserved for the Arbitrator.

As discussed, because the parties clearly and unmistakably delegated arbitrability, the Court should not reach other defenses which Plaintiff may assert. However, because Plaintiff's counsel raised other defenses in the parties' meet and confer sessions, Target addressees these points here out of an abundance of caution.

### 1.    Plaintiff's Use of the Disputed Gift Card Falls Within the Scope of the Agreement to Arbitrate.

Plaintiff's claim falls within the scope of the parties' agreement to arbitrate. Plaintiff contends that her claim falls outside the scope of the arbitration provision in the Terms & Conditions because "[n]o online terms and conditions were applicable to the in-store purchase" and that "any online terms and conditions are irrelevant and inapplicable." (Brown Decl., ¶ 2, Ex. 3 at Feb. 25, 2022 message at 12:01 P.M.)

Not only is Plaintiff an online account holder since 2018 (Stoops Decl., ¶ 6), but after receiving a gift card as part of the in-store promotional transaction on November 14, 2020 (Compl., ¶ 12), Plaintiff redeemed the gift card on Target's website on

November 17, 2020 (Stoops Decl., ¶ 8). Plaintiff returned the toy that she bought in order to qualify for the gift card promotion on November 29, 2020 (Compl., ¶ 13), but Plaintiff did not return the merchandise she purchased when she redeemed the disputed gift card online (Stoops Decl., ¶ 9).

The Terms & Conditions provide: "IN THE EVENT OF ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF, RELATING TO, OR **CONNECTED IN ANY WAY WITH THE SITE**, … SUCH CLAIM, DISPUTE OR CONTROVERSY WILL BE RESOLVED EXCLUSIVELY BY FINAL AND BINDING ARBITRATION…" (Cook Decl., ¶ 8, Ex. 1 (emphasis added).) Plaintiff accepted the Terms & Conditions several times before her in-store visit, and then proceeded to use the disputed gift card on the Target website. (Stoops Decl., ¶¶ 7-8.) In other words, by her own actions, Plaintiff made this dispute related to and connected with Plaintiff's use of the site.[9]

## 2.    *McGill* Does Not Bar Arbitration of This Dispute.

Plaintiff's counsel contends that "even though no arbitration agreement applies to the transaction at issue, even if it did, this case would be excluded from arbitration given the fact that Maybaum is seeking public injunctive relief." (Brown Decl., ¶ 2,

---

[9] Plaintiff's contentions that "issues pertaining to the scope of the arbitration provision are not 'reserved for the arbitrator' where, as here, the arbitration provision does not apply" and that "Plaintiff certainly did not believe, when she created an online account, that her in-store transactions would be governed by any of Target's online terms and conditions" (Brown Decl., ¶ 2, Ex. 3, at Feb. 25, 2022 message at 10:30 A.M.), are arguments that application of the Terms & Conditions is wholly groundless. This, too, is an argument reserved for the arbitrator. *See Henry Schein, Inc.*, 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.").

Ex. 3, at Jan. 28, 2022 message (citing *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017)).) This, too, is mistaken.

Certain California consumer protection statutes, including the UCL, make available the remedy of a public injunction, which is defined as "injunctive relief that has the *primary* purpose and effect of prohibiting unlawful acts that threaten future injury to the *general public*." *McGill*, 2 Cal. 5th at 951 (emphasis added). The purpose of public injunctive relief is "to remedy a public wrong, not to resolve a private dispute, and any benefit to the plaintiff requesting such relief likely would be incidental to the general public benefit of enjoining such a practice." *Id.* at 961 (internal citations, quotation marks, and ellipses omitted).

In *McGill*, the California Supreme Court held that an arbitration provision waiving McGill's statutory right to seek public injunctive relief under the UCL *in any forum* was invalid and unenforceable, because "the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under [the UCL] would seriously compromise the public purposes [the UCL was] intended to serve." *Id.* The *McGill* court decided that the rule it created is a generally applicable contract defense and is not preempted by the FAA. *Id.* at 961-66; *see also Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 827 (9th Cir. 2019), *Tillage v. Comcast Corp.*, 772 Fed. Appx. 569 (9th Cir. 2019), and *McArdle v. AT&T Mobility LLC*, 772 Fed. Appx. 575 (9th Cir. 2019) (each decided on the same day and holding that the FAA does not preempt *McGill*).

For *McGill* to apply, therefore, Plaintiff must make three threshold showings: (1) that California law governs; (2) that the Terms & Conditions prohibit her from seeking public injunctive relief in any forum; and (3) that she seeks public injunctive relief. Plaintiff cannot carry her burden of proof on any of these three requirements.

###### a.    Minnesota Law Governs the Terms & Conditions.

*McGill* is a rule of California law. But during the parties' meet and confer calls and emails, Plaintiff made no attempt to show that California law applies to this dispute. It does not. The Terms & Conditions provide: "YOU AGREE THAT ALL

MATTERS RELATING TO YOUR … USE OF THE SITE AND ALL MATTERS ARISING OUT OF OR RELATED TO THESE TERMS & CONDITIONS, INCLUDING ALL DISPUTES, WILL BE GOVERNED BY … THE LAWS OF THE STATE OF MINNESOTA, WITHOUT REGARD TO MINNESOTA'S CHOICE OF LAW PRINCIPLES." (Cook Decl., ¶ 8, Ex. 1.) This broad provision expressly covers both Plaintiff's claim (which includes her redemption of the disputed gift card online) and the validity of the Terms & Conditions agreement itself.

Courts generally give effect to parties' contractually agreed-upon choice of law provisions. *See Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 449 (Minn. Ct. App. 2001) (holding that "[c]omity does not require that Minnesota defer to the California court in this matter" where, among other things, "the parties to this contract included a choice-of-laws provision, agreeing that Minnesota law should govern disputes."); *see also* Restatement (Second) of Conflict of Laws § 187.

As the party opposing arbitration on public policy grounds, Plaintiff bears the burden of showing that the Minnesota choice-of-law provision should not apply, that California is the state whose laws would ordinarily apply, that there is no substantial relationship between the parties and Minnesota (she cannot make that particular showing, since Target is a Minnesota company), or that application of Minnesota law is contrary to a fundamental policy of California. Indeed, when Target's counsel raised the issue of the Minnesota choice-of-law provision during the parties' meet and confer exchanges, Plaintiff's counsel stated only that "[w]ith respect to your discussion of 'public injunctive relief,' we disagree with your position on this issue. This will be further briefed in the future, if necessary." (Brown Decl., ¶ 2, Ex. 3, at Feb. 16, 2022 message.)

### b.    Plaintiff Can Still Seek Public Injunctive Relief.

*McGill* also does not apply because Plaintiff's contract with Target does not waive her right to seek public injunctive relief in any forum. "[T]he question before [the California Supreme Court in *McGill* was] whether the arbitration provision is

valid and enforceable insofar as it purport[ed] to waive [the plaintiff's] right to seek public injunctive relief *in any forum*." *McGill*, 2 Cal. 5th at 956 (emphasis in original). The contract at issue in *McGill* both required arbitration of all claims and waived the plaintiff's right to seek public injunctive relief in arbitration, with the effect that plaintiff could not seek public injunctive relief anywhere. *Id.* at 952.

If some forum for a public injunction claim is left available, however, the contract is enforceable even under *McGill*. As the Ninth Circuit explained, "the *McGill* rule expresses no preference as to whether public injunction claims are litigated or arbitrated, it merely prohibits the waiver of the right to pursue those claims in *any* forum." *Blair*, 928 F.3d at 827 (emphasis added); *see also id.* ("The *McGill* rule … shows no hostility to, and does not prohibit, the arbitration of public injunctions. It merely prohibits the waiver of the right to pursue public injunctive relief in *any* forum….") (emphasis added).

In *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148 (9th Cir. 2021), the Ninth Circuit considered whether an agreement providing for individual arbitration precluded public injunctive relief in arbitration. *Id.* at 1153. The agreement authorized the arbitrator to "award all [injunctive] remedies available in an individual lawsuit under [California] law" but limited relief to what was "available in an individual lawsuit." *Id.* As here, the plaintiff invoked *McGill*. *Id.* The Ninth Circuit held that public injunctive relief remained available, and the agreement therefore did not violate *McGill*. *Id.* at 1158. The Ninth Circuit reasoned that individual arbitration "does not prohibit all claims that impact other people." *Id.* at 1153. A claim by a single plaintiff "could theoretically result in an injunction that broadly affects others." *Id.* at 1154; *cf. Blair*, 928 F.3d at 831 (finding agreement for individual arbitration prohibiting "relief that would affect [other] account holders" violated *McGill*); *see also In re Juul Labs, Inc., Antitrust Litig.*, No. 20-02345, 2021 WL 3675208, at *14 (N.D. Cal. Aug. 19, 2021) ("This court must follow *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1158 (9th Cir. 2021),

1  where the Ninth Circuit confirmed that 'public injunctive relief' is generally available
2  arbitration.").

3      Applying this principle, courts have found agreements to be enforceable and
4  compelled arbitration of claims for public injunctive relief so long as the parties'
5  agreements do not expressly prohibit claims for public injunctive relief in any forum.
6  *See Hill v. BBVA USA*, No. 20-1016, 2021 WL 2206477, at \*4 (S.D. Cal. June 1,
7  2021) ("Because Plaintiffs are free to seek public injunctive relief in arbitration, there
8  is no conflict with *McGill*, and the Arbitration Agreement is valid and enforceable.");
9  *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 901 (N.D. Cal. 2018) ("Magana can
10 seek public injunctive relief in arbitration under the terms of the agreement, so the
11 agreement is enforceable under *McGill*."); *Saheli v. White Mem'l Med. Ctr.*, 21 Cal.
12 App. 5th 308, 332 (Cal. Ct. App. 2018) (reversing a trial court's order denying the
13 defendant's petition to compel arbitration, finding that the plaintiff's "reliance on
14 *McGill* … is misplaced…. Unlike the present controversy, [*McGill*] involved [an]
15 agreement[ ] to completely waive, in any forum, certain unwaivable substantive rights
16 and remedies. Here, in contrast, the Arbitration Agreement does not mandate the
17 waiver of any substantive rights or remedies.").

18     The Terms & Conditions permit Plaintiff to seek public injunctive relief in
19 arbitration. Indeed, the contract advises that "ARBITRATORS CAN AWARD THE
20 SAME DAMAGES AND RELIEF THAT A COURT CAN AWARD." (Cook Decl.,
21 ¶ 8, Ex. 1.) Because the Terms & Conditions do not waive Plaintiff's right to public
22 injunctive relief in any forum, the Terms & Conditions would remain enforceable
23 even if *McGill* were applicable.

24         c.      **Plaintiff Does Not Seek Public Injunctive Relief.**

25     The terms "public injunction" and "public injunctive relief" do not appear
26 anywhere in the Complaint. (*See generally* Compl.) In the eighth and final point of her
27 Prayer, Plaintiff makes a passing reference to seeking "[s]uch other injunctive and
28 equitable relief as the Court may deem proper," but does not say what form of

128345866

27

injunctive relief *Plaintiff* seeks. (*See* Compl., at Prayer.) This is not enough to trigger *McGill*, as Plaintiff does not expressly seek a public injunctive remedy. *See Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 753 (Cal. Ct. App. 2019) (*McGill* not triggered where public injunctive relief is not affirmatively alleged). Even if she had expressly alleged a request for public injunctive relief, however, Plaintiff could not invoke *McGill* because her claims do not support public injunctive relief. Plaintiff asserts putative claims on behalf of a class and subclass comprised of various persons who already were "charged money, in connection with their participation in a promotion." (Compl., ¶ 20.)

　　*McGill* itself explained that "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—*or to a group of individuals similarly situated to the plaintiff*—does not constitute public injunctive relief." 2 Cal. 5th at 955 (emphasis added); *see also, e.g.*, *Johnson v. JP Morgan Chase Bank, N.A.*, No. 17-2477, 2018 WL 4726042, at *6-7 (C.D. Cal. Sept. 18, 2018) (injunction to prevent further injury to persons injured by a bank's imposition of fees is not an injunction to benefit the general public, because the group of people who contract with the bank is not the same as the general public; "Merely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for public injunctive relief."); *Wright v. Sirius XM Radio Inc.*, No. 16-01688, 2017 WL 4676580, at *9 (C.D. Cal. June 1, 2017) (requests for injunctive relief against misrepresentations and omissions made in connection with lifetime Sirius subscriptions "do not request public injunctive relief," and "any benefit to the public is merely 'incidental'"); *McGovern v. U.S. Bank N.A.*, 362 F. Supp. 3d 850, 859 (S.D. Cal. 2019) (plaintiff sought no public injunctive relief where it was "questionable whether the general public would receive any benefit from the injunction Plaintiff seeks, as the general public has not been subject to and will not be subject to any of the allegedly improper fees that constitute Plaintiff's injury.").

This matter is similar to *Johnson*, *Wright*, and *McGovern*. Plaintiff's primary aim is to gain compensation or injunctive relief to redress injury to herself and other customers of Target, not to prevent future injury to the public at large. Plaintiff does not say what she seeks to enjoin, much less allege or show how the general public—as opposed to persons who already transacted with Target—would benefit from an injunction. *McGill* therefore does not apply.

### 3.    The Contract is Not Unconscionable.

Plaintiff's counsel advises that Plaintiff "reserves her right to contend that any such terms and conditions are unconscionable and unenforceable, even with respect to online transactions," but has yet to explain if, let alone why, the arbitration provision in the Terms & Conditions is unconscionable. (Brown Decl., ¶ 2, Ex. 3, at Feb. 25, 2022 message at 12:01 P.M.)

An agreement "must be both procedurally and substantively unconscionable to be unenforceable." *Amirani v. Arthur J. Gallagher Serv. Co., LLC*, No. 20-01526, 2020 WL 8484876, at *3 (C.D. Cal. Dec. 28, 2020) (Scarsi, J.) (citing *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11, 12 (Cal. 2016)); *see also Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) ("An agreement to arbitrate is unconscionable only if it is both procedurally and substantively unconscionable."). "[C]ourts employ a 'sliding scale' approach, requiring less procedural unconscionability where the terms are more substantively oppressive, and vice versa." *Amirani*, 2020 WL 8484876, at *3 (quoting *Clark v. Beauty Sys. Grp., LLC*, No. 19-258, 2019 WL 4148180, at *3 (C.D. Cal. Apr. 25, 2019)).

An agreement is not procedurally unconscionable merely because it is presented on a take-it-or-leave-it basis. As this Court has explained, "[p]rocedural unconscionability focuses on the elements of oppression and surprise." *Amirani*, 2020 WL 8484876, at *3 (quoting *Roman v. Superior Ct.*, 92 Cal. Rptr. 3d 153, 159 (Cal. Ct. App. 2009)). Here, no such oppression or surprise exists. Not only are the Terms & Conditions clearly linked and available to customers before each transaction takes

place, but customers can take as much or as little time as they need to review the Terms & Conditions before creating an account and making each purchase. Moreover, Plaintiff cannot claim to have been surprised when, at the very top of the Terms & Conditions, Plaintiff was advised to "PLEASE READ THE FOLLOWING CAREFULLY AS IT AFFECTS YOUR LEGAL RIGHTS. THESE TERMS & CONDITIONS CONTAIN AN AGREEMENT TO ARBITRATE THAT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES RATHER THAN JURY OR ANY OTHER COURT PROCEEDINGS, OR CLASS ACTIONS OF ANY KIND." (Cook Decl., ¶ 8, Ex. 1.)

Nor are the Terms & Conditions substantively unconscionable.[10] Substantive unconscionability "addresses the fairness of the term in dispute." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010). A court considering substantive unconscionability should inquire "whether the term is one-sided and will have an overly harsh effect on the disadvantaged party." *Id.* There is nothing one-sided about the arbitration provision in the Terms & Conditions. For example, both Plaintiff and Target are required to arbitrate any claims they may have against each other. (Cook Decl., ¶ 8, Ex. 1.)

**E.    The Court Should Dismiss or Stay the Instant Litigation in Favor of Arbitration.**

As illustrated by the Ninth Circuit's affirmance of the trial court's dismissal in *Brennan*, this Court has discretion to dismiss the action based on an arbitration provision. *See also Thinknet Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004).

---

[10] Because both procedural and substantive unconscionability are required, if the Court determines that the Terms & Conditions are not procedurally unconscionable, it need not consider substantive unconscionability. *See Amirani*, 2020 WL 8484876, at *5 ("Without a finding of procedural unconscionability, the Court will not analyze further arguments related to substantive unconscionability.").

Alternatively, the FAA empowers this Court to stay proceedings until the parties have conducted arbitration proceedings. 9 U.S.C. § 3; *see also Entravision Commc'ns Corp. v. BroadView Software, Inc.*, No. 09-4573, 2009 WL 10675885, at *3 (C.D. Cal. Aug. 26, 2009) (staying case because the court found that the claims were arbitrable).

In addition, this Court may exercise its "discretionary power to stay proceedings." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). This power "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The competing interests—also known as the *Landis* factors—include:

> (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Id.* Here, all three *Landis* factors weigh in favor of the Court granting a stay. Accordingly, if this Court will not dismiss the action pursuant to the FAA, granting the requested stay would promote the interests of equity and judicial efficiency.

## V.   CONCLUSION.

For the foregoing reasons, the Court should grant this Motion, compel arbitration, and either dismiss or stay this action pending the outcome of arbitration.

DATED:  March 7, 2022        BLANK ROME LLP

By: /s/ Harrison Brown
    Ana Tagvoryan
    Harrison Brown
    Nicole N. Wentworth
Attorneys for Defendant
TARGET CORPORATION