UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

JS-6

Case No. 2:22-cv-00687-MCS-JEM     Date May 3, 2022

Title *Laura Maybaum v. Target Corporation et al.*

Present: The Honorable    Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings: (IN CHAMBERS) ORDER RE: MOTION TO REMAND (ECF No. 13), MOTION TO COMPEL ARBITRATION (ECF No. 15), AND MOTION TO DISMISS (ECF No. 16) (JS-6)

Plaintiff Laura Maybaum filed a putative class action against Defendant Target Corporation in Los Angeles County Superior Court, which Defendant later removed. NOR, ECF No. 1. Plaintiff moves to remand the action. Mot. to Remand ("MTR"), ECF No. 13. Defendant opposed the motion, MTR Opp'n, ECF No. 14, and Plaintiff replied, MTR Reply, ECF No. 17. Defendant moves to compel arbitration. Mot. to Compel Arbitration ("MTCA"), ECF No. 15; *see also* MTCA Mem., ECF No. 15-1. Plaintiff opposed the motion, MTCA Opp'n, ECF No. 18, and Defendant replied, MTCA Reply, ECF No. 22. Defendant also moves to dismiss the action under Rule 12(b)(6). Mot. to Dismiss ("MTD"), ECF No. 16. Plaintiff opposed the motion, MTD Opp'n, ECF No. 19, and Defendant replied, MTD Reply, ECF No. 23. The Court deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

I. **BACKGROUND**

Plaintiff alleges that Defendant advertised that a consumer could obtain a "FREE $10 Target GiftCard" with a purchase of toys or kids' books totaling $40 or

more. Compl. ¶ 10, ECF No. 1-3. Plaintiff alleges that she was charged $10 to obtain the purportedly free gift card. *Id.* Plaintiff received an advertisement for this gift card in or around November 2020. *Id.* ¶ 11. Plaintiff allegedly purchased a toy worth $40.49, received a gift card, and then returned the toy, only receiving a refund of $30.49. *Id.* ¶ 14.

Plaintiff made a purchase online on November 17, 2020 with the in-store gift card she received. Stoops Decl. ¶ 5, ECF No. 15-2. When she made her purchase online, she would have been notified that by placing her order, she agreed to Target's Terms and Privacy Policy. Cook Decl. ¶¶ 6–7, ECF No. 15-3. The Terms & Conditions Target presented to Plaintiff on November 17, 2020 included an arbitration clause. *See* Cook Decl. ¶ 9; Terms & Conditions, ECF No. 15-5. The Terms & Conditions state that "[t]hese Terms & Conditions contain an arbitration agreement that requires the use of arbitration on an individual basis to resolve disputes rather than jury or any other court proceedings, or class actions of any kind." Terms & Conditions 1 (emphasis removed).

The relevant portions of the Arbitration Agreement are below:

> Please read this section carefully. Except as the Terms & Conditions otherwise provide, you waive your rights to try any claim in court before a judge or jury and to bring or participate in any class, collective, or other representative action.
>
> - <u>Agreement to Binding Arbitration</u>
>
> You and Target agree that in the event of any claim, dispute, or controversy (whether in contract, tort, statute, or otherwise) arising out of, relating to, or connected in any way with (1) the site or (2) the breach, enforcement, interpretation, application, or validity of these Terms & Conditions, such claim, dispute or controversy will be resolved exclusively by final and binding arbitration, except as otherwise set forth in these Terms & Conditions (the "Arbitration Agreement").
>
> / / /

- Exceptions to Arbitration

  Notwithstanding the foregoing, in lieu of arbitration: (1) either you or Target can bring an individual claim in small claims court in the United States of America consistent with any applicable jurisdictional and monetary limits that may apply, provided that it is brought and maintained as an individual claim; and (2) you agree that you or Target may bring suit in court to enjoin infringement or other misuse of intellectual property rights.

- Jury Trial & Class Action Waiver

  Except as the Terms & Conditions otherwise provide, you and Target acknowledge and agree that you are each waiving the right to a trial by jury. The parties further agree that any arbitration shall be conducted in their individual capacities and not as a class action or other representative action, and the parties expressly waive their right to file a class action or seek relief on a class basis. You and Target may not be plaintiffs or class members in any purported class, collective, or representative proceeding, and may each bring claims against the other only in your or its individual capacity. The arbitrator may award declaratory or injunctive relief only on an individual basis and only to the extent necessary to provide relief warranted by the individual claim.

  If any court or arbitrator determines that any term in the immediately preceding paragraph is unenforceable for any reason as to any claim, then the Arbitration Agreement will be inapplicable to that claim, and that claim will instead proceed through litigation in court rather than by arbitration, but only after the conclusion of the arbitration of any claim or dispute that is subject to the Arbitration Agreement.

  / / /

- <u>Governing Law & Arbitration Rules</u>

  The Arbitration Agreement evidences a transaction in interstate commerce and thus the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern the interpretation and enforcement of this section. If the FAA is found not to apply to any issue that arises under this section or the enforcement of the Arbitration Agreement, then that issue shall be resolved under the laws of the State of Minnesota.

  The arbitration will be conducted under the then current and applicable rules of the American Arbitration Association ("AAA"). The AAA rules are available online at www.adr.org or by calling the AAA at 1-800-778-7879.

*Id.* at 25–26 (emphasis removed).

Plaintiff brings this action on behalf of a class who was the victim of Target's deceptive marketing. Compl. ¶¶ 15–16. Based on this, Plaintiff brings claims for: (i) a violation of the California Unfair Competition Act, *id.* ¶¶ 29–47; (ii) a violation of the California Consumers Legal Remedies Act, *id.* ¶¶ 48–57; (iii) a violation of the California False Advertising Law, *id.* ¶¶ 58–69; and (iv) negligent misrepresentation, *id.* ¶¶ 70–76.

## II.   LEGAL STANDARD

### A.   Motion to Remand

A defendant may remove an action from state court to federal court if the plaintiff could have originally filed the action in federal court. *See* 28 U.S.C. § 1441(a). CAFA provides federal subject matter jurisdiction if (1) the proposed plaintiff class is not less than 100 members, (2) the parties are minimally diverse, and (3) the aggregate amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2), (5)(B). "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing S. Rep. No. 109-14, at 42 (Fed. 28, 2005)).

Although "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court,"

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), the removing party bears the burden of establishing federal jurisdiction. *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) ("The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal.").

Where the amount in controversy is not apparent from the face of the complaint, the removing party "must prove by a preponderance of the evidence that the amount in controversy requirement [under CAFA] has been met." *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). While generally "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," where a plaintiff or the court contests the amount in controversy put forth by the defendant, "[e]vidence establishing the amount is required . . . ." *Dart Cherokee Basin*, 574 U.S. at 89. The parties, thus, "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

### B. Motion to Compel Arbitration

"[T]he Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

Generally, a court's role is limited to determining "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

But even these gateway issues can be submitted to an arbitrator where there is clear and unmistakable evidence that the parties intended that result. *See id.* (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).

## III. DISCUSSION

### A. Motion to Remand

Plaintiff argues that Defendant did not establish the amount in controversy exceeds $5,000,000 with the allegations in its notice of removal, MTR 11–21, or with the evidence submitted with its opposition, MTR Reply 6–10. Defendant provides the declaration of Audrey Leicher, the Director of Loyalty Marketing Product & Operations at Target, to establish the amount in controversy. Leicher Decl. ¶ 1, ECF No. 14-1. She first determined the gross sales generated in Target stores based on free gift card promotions by querying the Offer Management Tool and Point-of-Sale reporting systems. *Id.* ¶¶ 1–3. She determined the gross sales from free gift card promotions were no less than $140,904,120.00. *Id.* ¶ 3. She next concluded that she could not feasibly calculate the exact number of promotional purchases in California because the data was not readily accessible or regularly reported at the state level. *Id.* ¶ 4. Instead, because California's in-store promotional sales made up approximately 17.13% of nationwide promotional sales, she concluded that Californians would participate in the gift card promotional purchases at the same rate. *Id.* ¶¶ 5–6. Thus, she estimated that California free gift card in-store promotional sales had a value of $24,136,875.76. *Id.* ¶ 5. Using a similar method, she calculated the total value of redeemed gift cards. *Id.* ¶ 9. She concluded that this value was $6,158,567.32 for California alone. *Id.*

Plaintiff only argues Defendant did not demonstrate the amount in controversy with admissible evidence. MTR Reply 8–10. "Where a removing defendant has shown potential recovery *could* exceed $5 million and the plaintiff has neither acknowledged nor sought to establish that the class recovery is potentially any less, the defendant has borne its burden to show the amount in controversy exceeds $5 million." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (cleaned up). A defendant may establish this by relying on a chain of reasonable assumptions. *Id.* at 925.

Plaintiff cites several cases to argue that the Leicher declaration is not admissible. MTR Reply 7. None of these cases support concluding the Leicher declaration is not admissible. In each case Plaintiff cites, the respective courts concluded the declarations were not admissible because the declarations only included conclusory statements establishing foundation and because the declarants made unreasonable assumptions supporting the amount in controversy calculations. *See Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1121–25 (C.D. Cal. 2016); *Dunn v. SHC Servs., Inc.*, No. 1:21-cv-00744-NONE-SAB, 2021 WL 5122057, at *8–10 (E.D. Cal. Nov. 4, 2021); *Amirian v. Umpqua Bank*, No. CV 17-7574 FMO (FFMx), 2018 WL 3655666, at *4–6 (C.D. Cal. July 31, 2018). Here, Leicher establishes that she knows the proper databases to query given her position at Target and cited the databases she used to gather this information. Leicher Decl. ¶¶ 1–3. Additionally, Leicher relied on reasonable assumptions to calculate the value of offered and redeemed gift cards in California. *Id.* ¶¶ 5–6, 9.

Plaintiff argues that the Leicher declaration should have attached as exhibits the underlying data she considered, MTR Reply 8–10, but this is not necessary. Federal Rule of Evidence 1006 permits the use of summary evidence so long as the proponent makes "the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." A reasonable time and place may be during discovery. *See McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994) (concluding a defendant's burden to prove jurisdiction by a preponderance of the evidence "does not place upon the defendant the daunting burden imposed by the legal certainty test, to research, state, and prove the plaintiff's claims for damages"); *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at (E.D. Cal. May 1, 2007) ("There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation.").

Defendant establishes through reasonable assumptions and admissible evidence that the amount in controversy exceeds $5,000,000. The Court **DENIES** the motion to remand.

### B. Motion to Compel Arbitration

Defendant argues that the Court should compel arbitration because it formed an arbitration agreement that delegates arbitrability to the arbitrator. MTCA Mem. 16–20, 22–30. Defendant also argues that arbitration should proceed on an individual

basis. *Id.* at 20–22. Plaintiff contests the motion by arguing that the arbitration agreement does not apply to Plaintiff's in-store purchase of her gift card, MTCA Opp'n 6–10, 21–25, and that California law bars the arbitrability of some of Plaintiff's disputes, *id.* at 18–21.

1. Delegation of Arbitrability to the Arbitrator

The arbitration agreement applies to "any claim, dispute, or controversy (whether in contract, tort, statute, or otherwise) arising out of, relating to, or connected in any way with (1) the site or (2) the breach, enforcement, interpretation, application, or validity of these Terms & Conditions." Terms & Conditions 25. The arbitration agreement also incorporates the AAA rules. *Id.* at 26. Incorporation of the AAA rules demonstrates clear and unmistakable intent to arbitrability to the arbitrator. *Brennan*, 796 F.3d at 1130. Plaintiff argues that because the Ninth Circuit limited its conclusion in *Brennan* to sophisticated parties, *id.* at 1131, the Court should not determine the arbitrability question based the inclusion of the AAA rules because Plaintiff is an unsophisticated party. MTCA Opp'n 25.

As an initial matter, the majority of courts have concluded that *Brennan* applies equally to sophisticated and unsophisticated parties. *Torres v. Secure Commc'n Sys., Inc.*, No. SACV 20-00980-JVS (JDEx), 2020 WL 6162156, at *4 (C.D. Cal. July 25, 2020). Additionally, the arbitration mandates arbitration of "the breach, enforcement, interpretation, application, or validity" of the agreement. Terms & Conditions 25. This language unmistakably delegates arbitrability to the arbitrator by including the term "validity." *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (construing similar language). Plaintiff argues that this agreement does not cover her in-store transactions and that the parties possibly should apply an older arbitration agreement. MTCA Opp'n 21–25. Any dispute about the scope of an arbitration agreement, including whether the dispute arises out of or happens in connection with an arbitration agreement, is a proper matter for the arbitrator if an agreement delegates arbitrability. *Portland Gen. Elec.*, 862 F.3d at 986.

Plaintiff's argument that the delegation provision is unconscionable is something the Court must consider. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010). Plaintiff argues that it is unconscionable to apply AAA delegation rules to an unsophisticated consumer, MTCA Opp'n 24–25, but the Court follows the many courts that have concluded otherwise. *See Torres*, 2020 WL 6162156, at *4 (collecting cases applying *Brennan* to unsophisticated consumers). Plaintiff also

argues that the delegation agreement is unconscionable because there are multiple versions of the online Terms & Conditions and because the Terms & Conditions is too voluminous. MTCA Opp'n 24–25. Plaintiff's argument that the Terms & Conditions is too voluminous pertains to the entire agreement rather than to the delegation clause, so it is for the arbitrator to consider. *Jackson*, 561 U.S. at 72.

Plaintiff's argument that she could not expect the arbitration agreement to cover her in-store transactions is not an argument about unconscionability but instead is an argument about the scope of the agreement. It is thus a matter for the arbitrator. *Portland Gen. Elec.*, 862 F.3d at 986. The Court observes that because Plaintiff redeemed her gift card online, her dispute likely arose "in connection with" the Target website, Terms & Conditions 25, but the Court's opinion on this is irrelevant. The Supreme Court has held that once a contract delegates the arbitrability question to an arbitrator, a court may not override the contract, "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). To the extent Plaintiff grounds this argument in the doctrine of unconscionability, her argument does not apply to the delegation clause but instead to the agreement as a whole. Thus, it is for the arbitrator. *Jackson*, 561 U.S. at 72.

Thus, unless California law prohibits it, the Court must compel arbitration of Plaintiff's claims.

2. Application of California Law

Plaintiff argues that California law prohibits compelling arbitration of her claims because she seeks public injunctive relief. MTCA Opp'n 13–18. California law prohibits the waiver of the right to seek public injunctive relief in any forum. *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 963 (2017) ("[T]he FAA does not require enforcement of a provision in a predispute arbitration agreement that, in violation of generally applicable California contract law, waives the right to seek *in any forum* public injunctive relief under the UCL, the CLRA, or the false advertising law."); *see also DiCarlo v. MoneyLion,Inc.*, 988 F.3d 1148, 1158 (9th Cir. 2021) (holding that an arbitration agreement permitting public injunctive relief does not violate *McGill*). The arbitration agreement states that "[t]he arbitrator may award declaratory or injunctive relief only on an individual basis and only to the extent necessary to provide relief warranted by the individual claim." Terms & Conditions 25. Defendant argues that the language "relief warranted by the individual claim"

permits public injunctive relief and thus does not violate *McGill*. MTCA Reply 11. The Court accepts this interpretation and concludes this arbitration agreement does not violate *McGill*. *See Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 899–900 (C.D. Cal. 2020) (accepting Walmart's interpretation of a similar provision and compelling arbitration).

California law permits arbitration of Plaintiff's claims. The Court thus **GRANTS** the motion to compel arbitration.

### IV. CONCLUSION

The Court **DENIES** the motion to remand, ECF No. 13, **GRANTS** the motion to compel arbitration, ECF No. 15, and **DENIES AS MOOT** the motion to dismiss, ECF No. 16.

The parties are ordered to submit this action to arbitration within 30 days pursuant to the terms of the arbitration agreement. *See* 9 U.S.C. § 5. The case is stayed pending resolution of the arbitration. *See* 9 U.S.C. § 3. The Court directs the Clerk to remove the case from the Court's active caseload until further application by the parties or order of this Court. The parties shall file a joint status report within 120 days, and a further report every 120 days thereafter. Each report must state on the cover page the date the next report is due. Additionally, the parties must notify the Court within seven days of the conclusion of arbitration proceedings.

**IT IS SO ORDERED.**